**FOUR STRONG/HACKNEY, J.V., by and through its Liquidating Partner, FOUR STRONG BUILDERS, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 99–169C.

United States Court of Federal Claims.

May 29, 2002.

David R. Dearden, Wayne, Pennsylvania, for plaintiff.

Michael D. Austin, Commercial Litigation Branch, Civil Division, United States Department of Justice, for defendant. With him on the briefs were Robert D. McCallum, Acting Assistant Attorney General, David M. Cohen, Director, and Bryant G. Snee, Assistant Director. Chuck Kullberg, Department of the Navy, of counsel.

## OPINION

BRUGGINK, Judge.

In this action, plaintiff, a joint venture, pleads that its contract with the government was allegedly breached when the government did not pay the joint venture in accordance with the terms of the contract. Pending are the parties' cross-motions for summary judgment. The motions are fully briefed. Oral argument was held on May 21, 2002. For the reasons stated below, defendant's motion for summary judgment is granted.

## FACTUAL BACKGROUND [1]

On September 13, 1993 Four Strong Builders, Inc. ("Four Strong"), a New Jersey corporation, and The Hackney Group ("Hackney"), a Pennsylvania corporation, entered into a joint venture. The purpose of the joint venture was to bid on approximately ten government contracts for asbestos removal and lead abatement. The joint venture was organized under New Jersey law. The resulting joint venture was styled as Four Strong Hackney J/V ("the joint venture" or "Four Strong/Hackney, J.V."). The joint venture agreement, under the heading of *General Provisions,* provided as follows:

2. *Name of Partnership; Trade Name and Fictitious Name Certificates:* The Partnership shall be conducted solely under the name Four Strong Hackney J/V. The Partnership will file such tradename or fictitious name certificates as required by law.

3. *Purpose and Scope of Partnership:* The purposes of the Partnership are: (i) to enter into contracts being let to SDBs by the Federal Government for the removal and abatement of asbestos and lead for the purpose of earning profits and; (ii) to perform such contracts in accordance with all legal requirements.

Except as expressly and specifically provided in this Agreement, none of the Partners shall have any authority to act for, or to assume any obligations or responsibility on behalf of or bind the other Partner or the Partnership. This Agreement shall not be deemed to create a general partnership between the Partners with respect to any activity whatsoever other than activities within the scope and business purposes of the partnership specified herein.

. . . .

5. *Business Office of Partnership:* The principal office for the transaction of the business of the Partnership shall be 180 Sargeant Avenue, Clifton, New Jersey, or at such other place or places, if any, as may be approved by the Partners from time to time. The Partnership also may maintain such other offices for the transaction of business at such other locations as the Partners shall deem advisable.

Additionally, under the heading of *The Partners,* the Joint Venture Agreement stated:

2. *Duties of the Partners:* The Partners shall have the exclusive right and power to manage, operate and control the business and affairs of the Partnership, to do all things necessary or appropriate to carry on its business and purposes and to exercise all rights and powers conferred upon the Partners

---

1. The facts are drawn from the parties' joint stipulation.

by law, including, without limitation, the right to:

. . . .

(d) enter into, make and perform any and all contracts, leases and other agreements in connection with or in furtherance of the business and purposes of the Partnership and to terminate tenant leases, if any, in the Project;

. . . .

Unless otherwise agreed to in writing, all actions required or permitted to be taken by the Partners shall only be taken upon unanimous consent of the Partners.

On April 15, 1994, the Department of the Navy issued Solicitation No. N62472–92–C–0038 for asbestos removal and lead abatement at the Philadelphia Naval Station. The agency determined that Four Strong Hackney J/V was the lowest responsive bidder. Before awarding the contract, the government requested and received the written Joint Venture Partnership Agreement. The contracting officer, David Rule, then asked each of the principals of the companies forming the joint venture to execute certain letters. Mr. Bruce Hackney, president of the Hackney Group, Inc., on June 29, 1994 wrote "I Bruce Hackney President of the Hackney Group Inc., certif[y] that Four Strong Builder Inc., has the authority to sign contracts, change-orders and etc. [o]n behalf of the Joint Venture." Mr. Rajia Cirica, president of Four Strong Builders, on July 24, 1994 wrote "Mr. Bruce Hackney has the authority to obligate the Joint Venture in all procurement matters on the above referenced contracts, and all contracts."

On July 28, 1994, the contract was awarded to the joint venture. The contractor is referred to on the cover of the contract as "Four Strong Builders Inc and The Hackney Group A Joint Venture." In a box labeled "Name and Address of Offeror," the contract identified the contractor as "Four Strong/Hackney J.V." The business address

listed was that of Hackney. The fixed price stated was $442,829. Administration of the contract was delegated to the Commander of the Philadelphia Naval Yard.

The government issued six checks for work performed upon the contract. On October 24, 1994 the joint venture submitted an invoice requesting payment of $7,630. The invoice was signed by Arnold Francisco, vice-president of Hackney. On November 5, 1994, the United States Treasury, Defense Finance and Accounting Service ("the Treasury"), issued a check payable to the order of "Four Strong Builders, Inc. and the Hackney Group, a Joint Venture" in the amount of $7,630. The check was deposited into the joint venture account in New Jersey with the endorsement "Pay to the Order of Midlantic Bank Clifton Office, Clifton N.J. 07013 For deposit Only Four Strong Builders Hackney Group Joint Venture, 1405517838."

Shortly after payment of the first check, the Navy upgraded its computer payment system. On December 1, 1994, a contractor's invoice signed by Arnold Francisco in the name of "The Hackney Group, Inc." was submitted to the Navy requesting payment in the amount of $157,013 for work performed by the joint venture. The Treasury, on December 16, 1994, issued a check payable to the order of "Four Strong Builders and the H" in the amount of $157,013. The check was deposited into a bank account controlled only by Hackney and after Hackney had forged a signature for Four Strong.[2]

On January 4, 1995, a contractor's invoice signed by Arnold Francisco in the name of "The Hackney Group, Inc." was submitted to the Navy requesting payment in the amount of $180,318 for additional work performed on the contract. The invoice was processed by Elizabeth Staub, contract specialist, who denies intentionally making a change to the name of the payee. For this invoice payment, a check was issued by the Treasury on January 13, 1995, to "The Hackney Group, a Joint Venture" in the amount of $180,041.70. The check was deposited into an account

**2.** A claim by Four Strong Builders against Hackney and PNC Bank, the successor-in-interest to Midlantic Bank, regarding the improper endorsement of this check was later heard before the Court of Common Pleas of Philadelphia. Judgment was entered against Hackney and PNC Bank. The present action does not seek recovery of Four Strong's share of this second check.

maintained by Hackney with the endorsement of "The Hackney Group, Inc. For Deposit Only, 0601410079."

On March 17, 1995, a contractor's invoice signed by Arnold Francisco was submitted in the name of "The Hackney Group, Inc., A Joint Venture" requesting payment in the amount of $98,144.30. The Navy withheld $21,100 from the requested amount. On March 29, 1995, the Treasury issued a check in the amount of $77,044.30 made payable to "The Hackney Group, a Joint Venture." The check was endorsed by Bruce Hackney, for deposit only, and deposited into an account maintained by Hackney.

The last two checks and invoices were handled in the same manner. Both invoices were signed by Arnold Francisco and submitted in the name of "The Hackney Group, Inc." The checks issued on May 11 and August 29, 1995 by the Treasury were made payable to "The Hackney Group, A Joint Venture." Both checks were endorsed by Hackney Group and deposited into its bank account. The final check was accompanied by a Contractor's Release signed by Mr. Francisco. The bottom of the release contained a certification signed by Mr. Hackney granting Mr. Francisco the power to sign for Hackney Group. On August 17, 1995, Jerry Chapman, contracting officer, approved the final $11,000 invoice before it was paid. Four Strong did not receive any proceeds from the last five checks.

Work on the contract was completed by August 2, 1995. Sometime after the contract closed out, Four Strong discovered that Hackney had diverted the contract proceeds for its own use. In November 1997, Four Strong instituted a state court action against Hackney and received a default judgment for $335,666.18. In 1999, Mr. Hackney, Mr. Francisco, and The Hackney Group, Inc. were indicted for fraudulent activity on unrelated federal contracts. All were subsequently tried and convicted.

On August 26, 1998, Four Strong submitted a claim to the contracting officer for $140,720.80. The Navy began an investigation into how and why the payee's name in the computer payment system was changed after the second invoice was processed. It was unable to determine then or thereafter why the payee name was altered.

## DISCUSSION

The government's contracting partner in regard to the Solicitation was Four Strong/Hackney, J.V., the plaintiff here, and the government had a contractual obligation to pay that same entity. The four checks that are the subject of this litigation were made payable to the order of "The Hackney Group, A Joint Venture." The question is whether these checks constituted payment to the joint venture, although none included Four Strong's name.

The Court of Claims considered the general issue of payment to joint ventures in *Lentz v. United States,* 171 Ct.Cl. 537, 346 F.2d 570 (1965), although the specific issue before us now was not squarely presented. In *Lentz,* a joint venture, "Lentz and McElvany," contracted to deliver manganese ore to the United States. Checks issued by the government in satisfaction of its obligation to pay the joint venture were made payable to "Lentz and McElvany." The last two of these checks were endorsed solely by McElvany. The Treasury then paid these checks. Plaintiff Lentz alleged that this payment by the government was negligent. *Lentz,* 171 Ct.Cl. at 544, 346 F.2d 570. The court rejected the argument, citing the general proposition, that, "Where joint adventurers do work for a third person who pays either or one of them, the payment is a discharge of the obligation as to both or all." *Id.* at 545, 346 F.2d 570 (citing 33 C.J. 874, 48 C.J.S. Joint adventures § 15). The court also noted, however, that the plaintiff had negotiated two earlier checks solely on his own signature:

> After the policy of utilizing the endorsement of checks by a single partner was established by plaintiff, the defendant was not required nor would it be expected to do otherwise than adopt and follow the same procedure with respect to other checks made payable to the joint venturers. In fact, defendant was simply following the provisions of the agreement with respect

to endorsement of checks made out to "Lentz and McElvany."

*Id.*

The facts of *Lentz,* in short, are not squarely on point because there is no comparable prior history of one of the partners negotiating checks made payable to the joint venture. In addition, the checks at issue in *Lentz* were properly made payable to the order of the joint venture, unlike the checks here. Moreover, in this case, plaintiff alleges that the government's conduct constituted a breach of contract.

■ Although *Lentz* is not dispositive, neither is it irrelevant, for we believe it stands for the general proposition that payment to one party to a joint venture normally constitutes payment to all. The Restatement is in accord: "Except ... as stated in § 300, any joint obligee, unless limited by agreement, has power to discharge the promisor by receipt of the promised performance or by release or otherwise, and tender to one joint obligee is equivalent to a tender to all." Restatement (Second) of Contracts § 299 (1981). New Jersey law is not inconsistent: "[e]ach partner is an agent of the partnership for the purpose of its business ... unless the partner had no authority to act for the partnership in the particular matter and the person with whom the partner was dealing knew or had received a notification that the partner lacked authority." N.J.Stat. § 42:1A–13 (2001).

■ In this case, of course, the agreement appeared to limit the application of the general rule by requiring the consent of both parties. After receiving a copy of the joint venture agreement and the plaintiff's bid, however, the contracting officer asked for letters from both Four Strong and Hackney with respect to their ability to commit the joint venture to the contract. This was a proper request to bring the bid into conformance with small business regulations that require that "[a]ll parties to the joint venture must sign such documents as are necessary to obligate themselves to ensure performance." 13 C.F.R. § 124.321(e) (1998). Mr. Hackney executed a letter certifying that Four Strong had "the authority to sign contracts, change-orders and etc." on behalf of the Joint Venture. Mr. Cirica executed a reciprocal letter giving Mr. Hackney "the authority to obligate the Joint Venture in all procurement matters ... and all contracts." These would seem to be within the contemplation of the joint venture agreement, which permitted the parties to alter the mutual consent requirement "in writing."

Plaintiff contends, however, that Mr. Cirica's letter should be narrowly read to apply only to whether the joint venture was bound by the underlying contract. We disagree. The word "procurement" is defined by statute as "all stages of the process for determining a need for property or services and ending with contract completion and closeout." 41 U.S.C. § 403(2) (1994). Thus even if the agreement initially put the government on notice that actions had to be taken by both partners, the subsequent letters are sufficient on their face to give the government reason to believe that either party could conduct contract affairs, including receiving payment, on behalf of both. The letters indicate full contracting authority in either co-venturer. This suggests that the general rule— either party can accept payment on behalf of both—applies.

■ Nor would the current case fall within the exception created by Restatement section 300 which, in relevant part, provides,

A discharge of the promisor [the government] by an obligee [Hackney] in violation of his duty to a co-obligee [Four Strong] of the same performance is voidable to the extent necessary to protect the co-obligee's interest in the performance, except to the extent that the promisor has given value or otherwise changed his position in good faith and without knowledge or reason to know of the violation.

Restatement (Second) of Contracts § 300(2) (1981). The logic and justice of this rule are expressed in a comment to section 300: "A promisor who participates in a breach of a duty owed by one co-obligee to another cannot retain any advantage thereby obtained at the expense of the injured co-obligee unless he is in the position of a bona fide purchaser." Restatement (Second) of Contracts § 300 cmt. b(1981).

Plaintiff argues that this case falls within the exception because the government did not act in good faith and because it had reason to know of the violation of trust. It believes that the removal of the words "Four Strong" from the last four checks is the result of an intentional, albeit careless, act by the government. Plaintiff contends that the act was not in good faith because there existed no reason or authority for altering the name on the check. *See Technical Assistance v. United States,* 150 F.3d 1369 (Fed. Cir.1998) (holding that because the government had valid business reasons to make a contract change it was made in good faith). Plaintiff also argues that the government had a reason to know of the violation because it could have compared the bank account numbers on the endorsed checks with the joint account numbers submitted in the bid information and included in the contract. In addition, Ms. Staub admitted that changing the name of the payee in the computer system would be a violation of internal policy.

In this case, the government undoubtedly "gave value" when it paid Hackney. The question is whether this change in position was in good faith and without knowledge of Hackney's duplicity. We hold that the government gave value in good faith and without knowledge or reason to know of Hackney's deceit. The record reflects, without dispute, that the partial payee name on the four checks was caused inadvertently by clerical error. Plaintiff conceded at oral argument that the government had no reason to know of Hackney's violation of its duty to Four Strong. Nor will we require the contracting officer, without reason to be suspicious, to review each endorsed check to compare the account into which it was deposited with the account number given in the parties' contract. As we held above, the Navy could in good faith rely on the reciprocal authorization letters. It thus had no reason to suspect

either Hackney's duplicity or that the parties did not perceive themselves bound by each other's actions.

Plaintiff also asserts that the government violated the Federal Acquisition Regulations when it released checks with the payee designated as "The Hackney Group, A Joint Venture" instead of "Four Strong Builders, Inc. and the Hackney Group, a Joint Venture." The regulation states "[i]f only a change of the contractor's name is involved and the Government's and contractor's rights and obligations remain unaffected, the parties shall execute an agreement to reflect the name change." 48 CFR § 42.1205 (2001). The regulation does not apply, however. The contractor did not change its name, therefore there arose no need for the parties to execute an agreement to the reflect the name change. Instead, the contractor's name remained the same and checks were erroneously issued with only one of the co-venturer's names as payee.

We find that payment was made to the joint venture. It is therefore unnecessary to address defendant's alternative argument that any claim was released.

## CONCLUSION

We find that payment to the joint venture was made. We do not need to reach defendant's other arguments. Accordingly, defendant's motion for summary judgment is granted. Plaintiff's motion for summary judgment is denied. The clerk is directed to enter judgment dismissing the complaint. Each side to bear its own costs.